IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| PURITY HEALTH AND WELLNESS CENTERS, INC., a Wyoming Corporation; JEAN JUANITA ALLEN, an Individual, | |
| Defendants. | |

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Pursuant to the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, and Rule 65 of the Federal Rules of Civil Procedure, the United States of America hereby respectfully requests that the Court enter a temporary restraining order, preliminary injunction, and other equitable relief to prevent Defendants Purity Health and Wellness Centers, Inc. (Purity Health) and Jean Juanita Allen from facilitating and committing further violations of the federal wire fraud statute, 18 U.S.C. § 1343.  In particular, the United States requests that the Court require that Defendants (or any associated individual or entity) immediately cease offering to treat, cure, prevent, or otherwise mitigate the impact of the novel coronavirus and/or COVID-19 through "ozone therapy," and to remove, delete, take down, and cease making any representations regarding the same.  In support of this motion, the United States avers as follows:

**FACTUAL BACKGROUND**

Defendants are a Wyoming corporation and an associated individual that provide purported "ozone therapy" treatments from a location in Dallas.  App'x[1] at 2 (Schwethelm Decl.

_____

[1] "App'x _" citations refer to the pages of the Appendix in support filed contemporaneously with this Motion.

¶ 3).  Numerous publicly accessible posts that appear on the "purityhealthdallas" account on Instagram falsely state that Purity Health's ozone treatments can cure or prevent COVID-19 and/or coronavirus.  For example, one statement from Purity Health on or around January 22, 2020 reads:  "The CORONA VIRUS is here in the USA.  The only prevention is ozone. #coronavirus #ozonetherapy."  App'x at 8 (Schwethelm Decl. Ex. A).  Another public post from on or around January 21, 2020 states:  "Concerns over CORONAVIRUS—you don't have to worry if you do ozone! #coronavirus #epidemic #ebola #ozonetherapy."  *Id.* at 10 (Schwethelm Decl. Ex. B).  Another public post on the Purity Health Instagram account from on or around January 24, 2020 states: "Corona Virus update: ozone eradicates lethal viruses and bacteria. #coronavirus #ozonetherapy."  *Id.* at 12 (Schwethelm Decl. Ex. C).  In Instagram posts from on or around April 13, 2020, Defendants continued to use the hashtags "#covid19" and "#coronavirus" to suggest that they provide treatments for COVID-19.  *Id.* at 14-15 (Schwethelm Decl. Ex. D).

On a recorded phone call in early April 2020, Defendants represented to a person they believed to be a prospective customer that ozone therapy would cure coronavirus.  App'x at 3-4 (Schwethelm Decl. ¶¶ 11-19).  Defendants also acknowledged that FDA did not approve of their statements about curing COVID-19, that American doctors do not use ozone therapy to treat patients, and that ozone treatments performed improperly could be fatal to a patient.  *Id.* at 3-4 (Schwethelm Decl. ¶¶ 13, 19-22).  On the recorded call, Defendants also invited a COVID-19 positive patient to their location for treatment.  *Id.* at 4-5 (Schwethelm Decl. ¶¶ 19-20, 23).  When asked how Defendants would stop the transmission of the virus given that patient's positive diagnosis, Defendants offered as the only protective measure the purported fact that ozone would sanitize everything.  *Id.*

Ozone is a toxic gas.  *See* List of Highly Hazardous Chemicals, Toxics and Reactives, 29 C.F.R. § 1910.119, App. A.  The claims made by Purity Health are false and fraudulent, as the participants in the scheme either know or consciously avoid knowing the fact that there is no known effective medical cure or vaccine for COVID-19.  *See* CDC Information for Clinicians on

Investigational Therapeutics for Patients with COVID-19, *available at* www.cdc.gov/coronavirus/2019-ncov/hcp/therapeutic-options.html ("There are no drugs or other therapeutics approved by the US Food and Drug Administration to prevent or treat COVID-19.") (last accessed April 15, 2020); Beware of Fraudulent Coronavirus Tests, Vaccines and Treatments, *available at* www.fda.gov/consumers/consumer-updates/beware-fraudulent-coronavirus-tests-vaccines-and-treatments (last accessed April 16, 2020) (same); *see also* World Health Organization Coronavirus disease (COVID-19) advice for the public: Myth busters, *available at* www.who.int/ emergencies/diseases/novel-coronavirus-2019/advice-for-public/myth-busters (last accessed April 15, 2020) ("To date, there is no specific medicine recommended to prevent or treat the new coronavirus (2019-nCoV)."). Application of the toxic gas ozone is not known to prevent or cure COVID-19. *Cf.* 21 C.F.R. § 801.415(a).

As of April 15, 2020, agents have observed consumers patronizing Purity Health's Dallas location and have observed Defendant Allen entering Purity Health's Dallas location, indicating that the scheme is ongoing. App'x at 5 (Schwethelm Decl. ¶ 26). Additionally, as of April 15, 2020, publicly accessible online posts falsely stating that Purity Health's ozone treatments can cure or prevent COVID-19 and/or coronavirus still appear on the purityhealthdallas Instagram account. *Id.* at 6 (Schwethelm Decl. ¶ 27).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(a)-(b), the Court's inherent equitable authority, and 18 U.S.C. § 1345, the United States seeks an emergency temporary restraining order requiring that Defendants immediately cease offering to treat, cure, prevent, or otherwise mitigate the impact of the novel coronavirus and/or COVID-19 through "ozone therapy," and to remove, delete, take down, and cease making any representations regarding the same. This Court may grant injunctive relief under 18 U.S.C. § 1345 to remedy Defendants' continuing violation of 18 U.S.C. § 1343 (wire fraud).

Traditionally, to obtain a temporary restraining order, the government must show: "'(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the granting of the injunction will not disserve the public interest.'" *Bynum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)); *Smith v. Tarrant County College Dist.*, 670 F. Supp. 2d 534, 537 (N.D. Tex. 2009) (citations omitted). But the "standard for a statutory injunction is different from the injunction standard for private litigants." *United States v. Chung Products LP*, 941 F. Supp. 2d, 770, 794 (S.D. Tex. 2013). As such, where, as here, "'an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.'" *United States v. Grider*, No. 3:10-cv-0582-D, 2010 WL 4514623, *2 (N.D. Tex. Nov. 2, 2010) (quoting *Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 157 (5th Cir. 1982)).

"Injunctive relief to protect the public interest is expressly authorized by 18 U.S.C. § 1345. As such, neither a specific finding of irreparable harm, a showing of the inadequacy of other remedies at law, nor a balancing of the parties' interests is necessary prior to the issuance of a temporary restraining order." *United States v. Nannis*, No. 3:20-cv-940-B, 2020 WL 1920222, *1 (N.D. Tex. Apr. 17, 2020) (granting the government's motion and issuing a TRO pursuant to section 1345 to stop a chiropractor from offering to treat, cure, prevent, or otherwise mitigate the impact of COVID-19 in connection with an alleged homeopathic vaccine remedy); *United States v. Doe*, No. A-20-CV-306, 2020 WL 1426796, *2 (W.D. Tex. Mar. 22, 2020) (granting the government's motion and issuing a TRO pursuant to section 1345 against a website offering fraudulent coronavirus test kits); *see also United States v. Hague-Rogers*, No. 3:11-cv-0792-L, 2011 WL 2669100, *2 (N.D. Tex. July 7, 2011). In other words, the traditional test for injunctive relief does not apply where the United States seeks an injunction pursuant to a federal statute authorizing injunctive relief that was enacted to protect the public interest. *United States*

*v. Medina*, 718 F. Supp. 928, 930 (S.D. Fla. 1989) ("Where, as here, the statute was enacted to protect the public interest and itself authorizes injunctive relief, '[t]he passage of the statute is in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained.'" (alteration in original) (quoting *United States v. Diapulse Corp.*, 457 F.2d 25, 27 (2d Cir.1972))); *see also United States v. Sene X Eleemosynary Corp.*, 479 F. Supp. 970, 981 (S.D. Fla. 1979) ("The requirements for injunctive relief are met when the government establishes that defendants have violated the statute and there exists 'some cognizable danger of recurrent violation.'" (quoting *United States v. W. T. Grant*, 345 U.S. 629, 633 (1953)))).

## ARGUMENT

The United States is entitled to relief under the Anti-Fraud Injunction statute, 18 U.S.C. § 1345.  The facts set forth above and in the attached declaration of FBI Special Agent Schwethelm establish probable cause to believe that Defendants are facilitating an ongoing wire fraud scheme in violation of 18 U.S.C. § 1343.  The Court, therefore, should issue immediate injunctive relief in order to protect current and future victims of the fraud from further substantial monetary injury or worse.

Section 1345 of Title 18 (Section 1345) authorizes the United States to "commence a civil action in any Federal court to enjoin" persons who are "violating or about to violate" provisions of the federal wire fraud statute, 18 U.S.C. § 1343.  *See* 18 U.S.C. § 1345(a)(1)(A). Section 1345 further provides that a district court "shall proceed as soon as practicable" and "*may, at any time before final determination, enter such a restraining order or prohibition*, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought."  18 U.S.C. § 1345(b) (emphasis added).  Congress enacted Section 1345 as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1205(a), 98 Stat. 1837, 2152

(1984), to ensure that innocent people would not "continue to be victimized" by fraudulent schemes during the "months, if not years, before [a] case is ready for criminal prosecution."  S. Rep. 225, 98th Cong., 2d Sess. 401-02, reprinted in 1984 U.S.C.C.A.N. 3182, 3539-40.

This Court should issue Section 1345 relief, including a preliminary injunction, if the United States demonstrates "probable cause" that a violation of the wire fraud statute is occurring or is likely to occur.  *See United States v. Livdahl*, 356 F. Supp. 2d 1289, 1294 (S.D. Fla. 2005); *United States v. Fang*, 937 F. Supp. 1186, 1197 (D. Md. 1996).[2]  "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  "The proof of probable cause required is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion."  *United States v. One 1986 Nissan Maxima GL.*, 895 F.2d 1063, 1064 (5th Cir. 1990) (quotation marks, citations, and alterations omitted).

The evidence the United States presents to the Court establishes probable cause to believe that Defendants are facilitating a wire fraud scheme.  Section 1343 of Title 18 provides criminal penalties for anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," uses an interstate wire or causes an interstate wire to be used "for the purpose of executing such scheme or artifice."  18 U.S.C. § 1343.  To establish wire fraud, the United States must show "(1) that the defendant knowingly participated in a scheme to

---

[2] Some courts have applied a preponderance of the evidence standard, *see, e.g.*, *United States v. Quadro Corp.*, 916 F.Supp. 613, 617 (E.D. Tex. 1996), and the Fifth Circuit has "not decide[d] which standard of proof applies to a preliminary injunction pursuant to § 1345," *United States v. Legro*, 284 F. App'x 143, 145 (5th Cir. 2008).  Even if this Court were to employ such a preponderance of the evidence standard, the evidence adduced by the United States establishes that it is more likely than not that Defendants are facilitating an ongoing wire fraud scheme.

defraud; (2) that interstate wire communications were used to further the scheme; and (3) that the defendant intended that some harm result from the fraud." *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999).

The United States' investigation shows that Defendants, by posting false and fraudulent business solicitations on Instagram and communicating with potential customers regarding these false and fraudulent solicitations via email, are using interstate wires to execute a scheme to defraud by promising consumers that an ineffective, potentially dangerous treatment with a toxic gas can cure or prevent COVID-19. Defendants have acted with the requisite intent to defraud, which exists "when the defendant believed that he could deceive the person to whom he made the material misrepresentation 'out of money or property.'" *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009). Intent to defraud can be inferred from Defendants' conduct. *See United States v. Hawkins*, 905 F.2d 1489, 1496 (11th Cir. 1990) ("The Government need not produce direct proof of scienter in a fraud case[] . . . ; circumstantial evidence of criminal intent can suffice.").

Numerous representations Defendants made during a call with an individual cooperating with law enforcement and who Defendants understood to be was a prospective customer indicate fraudulent intent, such as Defendants' acknowledgement that they were not permitted to say that "ozone therapy" eradicates any viruses (while nonetheless asserting that it would), that American doctors do not treat patients with ozone, and that ozone gas poses a potentially fatal risk to patients. *Cf. United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010). Even if the Court chooses to construe Defendants' statements as consistent with an unreasonable subjective belief that ozone therapy cures COVID-19, their statements simultaneously evidence a conscious avoidance of knowledge of the basic fact that there is no known cure for COVID-19. *United*

*States v. Demmitt*, 706 F.3d 665, 676 (5th Cir. 2013) ("[The defendant's] failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge.").

Defendants also used and "cause[d] the use" of interstate wires. Proof that a defendant personally mailed or transmitted the matter or specifically knew about or intended the mailing or transmission to occur is unnecessary. *See United States v. Ward*, 486 F.3d 1212, 1222-23 (11th Cir. 2007). Rather, "a person 'causes' the mails to be used within the meaning of 18 U.S.C. § 1341, or the wires to be used within the meaning of 18 U.S.C. § 1343, when he acts 'with knowledge that the use of the mails [or wires] will follow in the ordinary course of business, or where such use can be reasonably be foreseen, even though not actually intended.'" *Id.* (quoting *Pereira v. United States*, 347 U.S. 1, 8-9 (1954)); *see also United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003) ("To 'cause' the interstate wires to be used, the use of the wires need not be actually intended; it need only be reasonably foreseeable."). Here, Agent Schwethelm accessed the website from an Internet-connected computer in Dallas, Texas, and Instagram is a publicly available website based in California. *See* App'x at 2 (Schwethelm Decl. ¶ 5). Purity Health and Allen also sent and received relevant emails from a Gmail email account—and Gmail is a publically available Internet-based email service provided by Google, which is also based in California. *Id.* at 2, 5 (Schwethelm Decl. ¶¶ 4, 24-25).

As discussed above, once the government demonstrates probable cause that a defendant is violating the mail or wire fraud statute, no specific finding of irreparable harm is necessary, no showing of the inadequacy of other remedies at law is necessary, and no balancing of the interests of the parties is required prior to the issuance of a preliminary injunction. *See Nannis*, 2020 WL 1920222 at *1, *Doe*, 2020 WL 1426796 at *2, *Hague-Rogers*, 2011 WL 2669100 at *2; *see also United States v. Williams*, 476 F. Supp. 2d 1368, 1377 (M.D. Fla. 2007) ("Once

illegal activity is clearly demonstrated by a plaintiff under 18 U.S.C. Section 1345, the remaining equitable factors of continuing irreparable injury, the balance of hardships to the parties, and the public interest are presumed to weigh in favor of granting injunctive relief.").[3]

Immediate relief is warranted to stop this scheme. Section 1345 provides broad relief, authorizing a court to "enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." 18 U.S.C. § 1345. The scope of the government's proposed temporary restraining order is tailored to halt the defendants' fraudulent provision of ineffective and dangerous purported healthcare services related to the COVID-19 pandemic. These treatments and the ozone therapy fraud scheme perpetrated by the Defendants serve no legitimate purpose. The immediate entry of a temporary restraining order to stop the fraudulent scheme and to shut down this fraudulent activity is necessary and appropriate to prevent further harm to consumers. *See* 18 U.S.C. § 1345(a)(1)(A) and (B) (stating that if a person is "violating or about to violate" the mail fraud or wire fraud statutes, the court "may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person.").

In particular, the United States requests that the Court require the Defendants to stop offering to treat, cure, prevent, or otherwise mitigate the impact of the novel coronavirus and/or

---

[3]   Although the United States need not demonstrate irreparable harm, or that the balance of hardships and the public interest weigh in favor of injunctive relief for the Court to issue injunctive relief under Section 1345, those factors each clearly support injunctive relief here. Allowing the Defendants to continue providing fraudulent and ineffective treatments for COVID-19 during the pandemic puts lives at risk. Moreover, the balance of the hardships is in the government's favor because the Defendants have no legitimate interest in continuing to operate an illegal fraud scheme, and it is in the public interest to prevent future intended victims from losing their money and to contain the spread of COVID-19.

COVID-19 through "ozone therapy," and to remove, delete, take down, and cease making any representations regarding the same.  Because there is an ongoing risk to the public from Defendants' fraudulent representations and treatments, and from Defendants treating people potentially suffering from COVID-19 without taking any appropriate measures to prevent the spread of the virus, the Government requests that the Court consider the Government's motion on an emergency basis.  Absent an immediate order from this Court, unknowing individuals may continue to expose themselves and others to COVID-19 by unnecessarily visiting Defendants' location to obtain a fraudulent treatment that does not work.

## CONCLUSION

The Defendants are engaged in a predatory wire fraud scheme that exploits the current COVID-19 pandemic.  The facts summarized above and set forth in more detail in the declaration of Special Agent Katherine Schwethelm provide more than probable cause to believe that the Defendants are engaged in ongoing wire fraud scheme and will continue to do so unless enjoined by the Court.  Accordingly, the United States requests that this Court grant the proposed temporary restraining order and order requiring the Defendants to show cause why a preliminary injunction should not issue to prevent Defendants from continuing to provide fraudulent, ineffective, and potentially dangerous treatments.

Dated:  April 22, 2020                    Respectfully submitted,

JOSEPH H. HUNT                            ERIN NEALY COX
Assistant Attorney General                United States Attorney
Civil Division

                                    By:   *s/ Kenneth G. Coffin*
GUSTAV W. EYLER                           KENNETH G. COFFIN
Director                                  Assistant United States Attorney
Consumer Protection Branch                Texas Bar No. 24076986
Civil Division                            1100 Commerce Street, Third Floor
                                          Dallas, Texas 75242
PATRICK R. RUNKLE                         Telephone:  (214) 659-8646
Trial Attorney                            kenneth.coffin@usdoj.gov
Consumer Protection Branch
P.O. Box 386                              *Counsel for the United States*
Washington, DC 20044
(202) 532-4723
patrick.r.runkle@usdoj.gov


## CERTIFICATE OF SERVICE

A copy of the foregoing Emergency Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue will be served on each of the Defendants by personal service in accordance with Rule 5 of the Federal Rules of Civil Procedure.


                         *s/ Kenneth G. Coffin*
                         KENNETH G. COFFIN
                         Assistant United States Attorney